## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUCIEN P. BAZLEY** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-2943** |
| **WARDEN LADREYT** | **SECTION "E" (4)** |

## REPORT AND RECOMMENDATION

The petitioner has filed a second Amended Complaint (Rec. Doc. No. 39) which, pursuant to the District Judge's prior Order (Rec. Doc. No. 38), re-asserts only claims which were exhausted in the state courts.  The matter as amended was referred to this United States Magistrate Judge (Rec. Doc. No. 40) for further proceedings and issuance of a Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(B) and (C); Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background[2]

On April 20, 2007, Bazley was charged by Bill of Information in Jefferson Parish with one count of second offense possession of marijuana and one count of possession of cocaine.[3]  The record reflects that, on February 22 and 23, 2007, in response to numerous complaints of narcotics

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]The factual and procedural history of Bazley's state criminal proceedings was outlined in full in the Court's prior Reports.  Rec. Doc. Nos. 16, 36.  It is repeated here in full and supplemented as necessary.

[3]St. Rec. Vol. 1 of 9, Bill of Information, 4/20/07.

activity, Lieutenant Nicholas Huth and Detective Kevin Treigle of the Kenner Police Department

conducted surveillance of Bazley's residence, located at 249 Clemson, Apartment 402.[4]

On the second day of the observation, Lieutenant Huth saw a woman, Darkus Ballard,[5] enter

that apartment and leave shortly thereafter.  The officers stopped Ballard and discovered that she

was in possession of a small bag of marijuana.  As a result of the conversation with Ballard,

Lieutenant Huth had Detective Treigle seek to obtain a search warrant for Bazley's apartment.

Bazley eventually exited his apartment and Lieutenant Huth detained him while he waited

for the search warrant.  Lieutenant Huth obtained the keys from Bazley's pocket and entered the

apartment to conduct a protective sweep for officer safety and to assure no one else was in the

apartment.  During this time, he observed a bag of marijuana floating in the toilet.  Because the toilet

was still flowing, it appeared to him that someone had tried to flush the marijuana down the toilet

or that the toilet was defective.  He left the apartment and waited for news of the search warrant.

When Detective Treigle advised him that the search warrant had been signed, Lieutenant

Huth and other officers searched Bazley's apartment.  Detective Treigle also returned to the

apartment and recovered a clear plastic bag containing green vegetable matter from the toilet.  Once

the bag was retrieved, Detective Treigle discovered that inside that plastic bag was another clear

plastic bag of crack cocaine.  He also seized a box of clear plastic sandwich bags and a digital scale.

Bazley was found competent to proceed and was brought to trial before a jury on January

28 and 29, 2008, which ended when the state trial court declared a mistrial after the jury was unable

---

[4]The facts of the case were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Bazley*, 60 So.3d 7, 12-13 (La. App. 5th Cir. 2011); St. Rec. Vol. 1 of 9, 5th Cir. Opinion, 09-KA-358, pp. 4-7, 1/11/11.

[5]Some of the pleadings and transcripts spell her last name as "Ballard" and some as "Bollard."

to reach a verdict.[6]  Bazley's second trial, held on March 12 and 13, 2008, also ended in a mistrial after another jury was unable to reach verdict.[7]  After a third trial before a different jury on March 24 through 26, 2008, Bazley was found guilty as charged on both counts.[8]

At a hearing held on May 5, 2008, the Trial Court denied Bazley's motions in arrest of judgment and for a new trial.[9]  After waiver of legal delays, the Trial Court sentenced Bazley to serve concurrent terms of four (4) years on each count.[10]

The State filed a multiple bill as to the second count.[11]  On July 14, 2008, the Trial Court adjudicated Bazley to be a fourth felony offender.[12]  The Trial Court vacated the original sentence imposed on count two and resentenced Bazley on July 18, 2008, to serve twenty (20) years in prison as a multiple offender to run concurrently with the sentence on count one.[13]

---

[6]St. Rec. Vol. 1 of 9, Trial Minutes, 1/28/08; Trial Minutes, 1/29/08;  Minute Entry, 7/25/07; Hearing Minutes, 12/11/07; St. Rec. Vol. 2 of 9, Trial Transcript, 1/29/08; St. Rec. Vol. 3 of 9, Trial Transcript, 1/29/08; Competency Hearing Transcript, 7/25/07; Hearing Transcript, 10/17/07; Hearing Transcript, 12/11/07.

[7]St. Rec. Vol. 1 of 9, Trial Minutes, 3/12/08; Trial Minutes, 3/13/08; St. Rec. Vol. 3 of 9, Hearing Transcript, 3/12/08; Transcript, 3/13/08; St. Rec. Vol. 6 of 9, Trial Transcript, 3/12/08; St. Rec. Vol. 7 of 9, Trial Transcript, 3/13/08.

[8]St. Rec. Vol. 1 of 9, Trial Minutes, 3/24/08; Trial Minutes, 3/25/08; Trial Minutes, 3/26/08; Jury Verdict, 3/26/08; St. Rec. Vol. 3 of 9, Hearing Transcript, 3/24/08; St. Rec. Vol. 7 of 9, Hearing Transcript, 3/24/08; St. Rec. Vol. 5 of 8, Trial Transcript, 3/25/08; Trial Transcript, 3/26/08.

[9]St. Rec. Vol. 1 of 9, Sentencing Minutes, 5/5/08; Motion in Arrest of Judgment, 4/1/08; *Pro Se* Motion for New Trial, 4/3/08; Motion for New Trial, 5/1/08.

[10]St. Rec. Vol. 1 of 9, Sentencing Minutes, 5/5/08; St. Rec. Vol. 5 of 8, Sentencing Transcript, 5/5/08.

[11]*Id.*; Multiple Bill, 5/5/08.

[12]St. Rec. Vol. 1 of 9, Multiple Bill Hearing Minutes, 7/14/08; St. Rec. Vol. 5 of 8, Multiple Bill Hearing Transcript, 7/14/08.

[13]St. Rec. Vol. 1 of 9, Multiple Bill Sentencing Minutes, 7/18/08; St. Rec. Vol. 8 of 9, Sentencing Transcript, 7/18/08.

On direct appeal, Bazley's appointed counsel urged two grounds for relief:[14] (1) the Trial Court erred in allowing Bazley's prior trial testimony to be read to the jury; and (2) the Trial Court erred in denying the motion for new trial because the evidence was insufficient to support the verdict.  Bazley filed pro se a supplemental brief arguing that the Trial Court also erred in denying the defense's motion to suppress the evidence.[15]

The Louisiana Fifth Circuit Court of Appeal affirmed the conviction on January 11, 2011, finding no merit in any of the claims raised.[16]  After review for errors patent on the record, the Court amended the sentence and remanded the matter for the Trial Court to clarify Bazley's probation or parole eligibility.

On June 17, 2011, the Louisiana Supreme Court denied Bazley's related writ application without stated reasons.[17]  His conviction and amended sentence became final ninety (90) days later, on September 15, 2011, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

---

[14]St. Rec. Vol. 5 of 9, Appeal Brief, 09-KA-0358, 3/30/10.

[15]St. Rec. Vol. 5 of 9, *Pro Se* Supplemental Brief, 09-KA-0358, 5/12/10.

[16]*Bazley*, 60 So.3d at 7; St. Rec. Vol. 1 of 9, 5th Cir. Opinion, 09-KA-358, 1/11/11.

[17]*State v. Bazley*, 63 So.3d 1039 (La. 2011); St. Rec. Vol. 2 of 9, La. S. Ct. Order, 2011-KO-0282, 6/17/11; St. Rec. Vol. 9 of 9, La. S. Ct. Writ Application, 11-KO-282, 2/10/11; St. Rec. Vol. 1 of 9, La. S. Ct. Letter, 2011-KO-282, 2/10/11.

In the meantime, on July 22, 2011, Bazley submitted to the state trial court an application for post-conviction relief in which he raised the following grounds:[18] (1) prior to his arrest, Lieutenant Huth violated his First Amendment rights to obtain signatures on a petition to stop harassment by the Kenner Police; (2) he was illegally arrested in violation of the Fifth Amendment; (3) the search warrant was based on hearsay making the warrant invalid; (4) appointed trial counsel provided ineffective assistance; (5) he was denied the right to confront Ballard as his accuser; (6) he was placed in double jeopardy as a result of the multiple trials; (7) the trial transcript on direct appeal was incomplete; (8) his constitutional rights were violated through malicious prosecution based on his prior felony convictions not his actual guilt; (9) the evidence was insufficient to support the convictions; (10) his Ninth Amendment rights were violated because his fate was left to a jury with no knowledge of the Constitution; and (11) the habitual offender bill was misused and constituted an abuse of discretion.

On December 9, 2011, the Trial Court issued an order denying relief.[19]  The Court determined that the first claim was procedurally barred for failure to previously raise it citing La. Code Crim. P. art. 930.4(B) and (C), and alternatively was without merit.[20]  The Trial Court also found that review of the second issue was procedurally barred, because it was addressed on direct appeal, citing La. Code Crim. P. art. 930.4(C).  The third claim was found to be procedurally barred for failure to raise it on direct appeal based on La. Code Crim. P. art. 930.4.  The Trial Court also determined that claims four through eight and ten were meritless.  The Court held that the ninth and

---

[18]St. Rec. Vol. 2 of 9, Uniform Application for Post-Conviction Relief, 8/9/11 (dated 7/22/11); see also Supplemental Application for Post-Conviction Relief, 9/29/11.

[19]St. Rec. Vol. 2 of 9, Trial Court Order, 12/9/11 (the order is stamp-filed 12/8/11).

[20]La. Code Crim. P. art. 930.4(B), and (C) prohibit post-conviction review of claims that were known and inexcusably not raised in proceedings leading to the conviction or which were not pursued on appeal.

eleventh claims were improperly raised on post-conviction review under La. Code Crim. P. art. 930.3.[21]

On June 1, 2012, the Louisiana Fifth Circuit denied Bazley's related writ application finding no error in the Trial Court's ruling, although it recognized that the ninth claim, insufficient evidence, was not procedurally barred under La. Code Crim. P. art. 930.3, but instead under La. Code Crim. P. art. 930.4(A), because it was addressed on direct appeal.[22] The Circuit Court also declined to address Bazley's arguments raised in the writ application that were not presented to the Trial Court in the post-conviction application. The Louisiana Supreme Court also denied relief on his subsequent writ application without stated reasons on November 2, 2012.[23]

In the meantime, on February 22, 2012, Bazley submitted a second application for post-conviction relief to the Trial Court arguing that the trial judge was not impartial.[24] The Trial Court denied relief on March 21, 2012, finding the claim was procedurally barred because it was not raised in prior proceedings and the petition was successive in violation of La. Code Crim. P. art. 930.4.[25]

---

[21]La. Code Crim. P. art. 930.3 sets forth the grounds on which post-conviction relief can be granted. In *State ex rel. Melinie*, 665 So.2d 1172 (La. 1996), the Louisiana Supreme Court held that, under La. Code Crim. P. art. 930.3, claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief. The rule was extended in *State v. Hebreard*, 708 So.2d 1291 (La. App. 4th Cir. 1998) to preclude challenges to multiple bill proceedings.

[22]St. Rec. Vol. 2 of 9, 5th Cir. Order, 12-KH-28, 6/1/12; St. Rec. Vol. 9 of 9, 5th Cir. Writ Application, 12-KH-28, 1/10/12 (dated 1/5/12).

[23]*State ex rel. Bazley v. State*, 99 So.3d 666 (La. 2012); St. Rec. Vol. 2 of 9, La. S. Ct. Order, 2012-KH-1457, 11/2/12; La. S. Ct. Letter, 2012-KH-1457, 6/25/12 (showing postmark 6/20/12); St. Rec. Vol. 9 of 9, La. S. Ct. Writ Application, 12-1457, 6/25/12 (dated and postmarked 6/20/12).

[24]St. Rec. Vol. 2 of 9, Application for Post-Conviction Relief, 2/29/12 (dated 2/22/12).

[25]St. Rec. Vol. 2 of 9, Trial Court Order, 3/21/12.

In its order dated May 11, 2012, the Louisiana Fifth Circuit found no error in the Trial Court's ruling based on La. Code Crim. P. art. 930.4.[26] The Louisiana Supreme Court also denied Bazley's related writ application on October 26, 2012, without stated reasons.[27]

Prior to that, on June 29, 2012, Bazley returned to the Trial Court with a motion seeking to correct or amend his sentence.[28] The Trial Court denied the motion on August 2, 2012.[29] The Louisiana Fifth Circuit denied the subsequent writ applications submitted by Bazley.[30] The Louisiana Supreme Court also denied Bazley's related writ application on July 31, 2013, citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[31]

While these matters proceeded, on March 28, 2013, the Trial Court denied relief on a pleading filed by Bazley from which the Court could not determine the relief being sought.[32] On June 26, 2013, Bazley submitted to the Trial Court another motion seeking to quash the multiple bill proceedings on the grounds that the bill contained an invalid predicate conviction from 1996.[33] The

---

[26]St. Rec. Vol. 2 of 9, 5th Cir. Order, 12-KH-417, 6/1/12; St. Rec. Vol. 9 of 9, 5th Cir. Writ Application, 12-KH-417, 5/11/12 (dated and postmarked 5/9/12).

[27]*State ex rel. Bazley v. State*, 99 So.3d 649 (La. 2012); St. Rec. Vol. 2 of 9, La. S. Ct. Order, 2012-KH-1522, 10/26/12; La. S. Ct. Letter, 2012-KH-1522, 7/5/12 (showing postmark 6/27/12); St. Rec. Vol. 9 of 9, La. S. Ct. Writ Application, 12-KH-1522, 7/2/12 (dated 6/25/12).

[28]St. Rec. Vol. 2 of 9, Motion to Correct Illegal Sentence, 6/29/12.

[29]St. Rec. Vol. 2 of 9, Trial Court Order, 8/2/12 (the order is file-stamped 8/1/12).

[30]St. Rec. Vol. 2 of 9, 5th Cir. Order, 12-KH-780, 12/4/12; St. Rec. Vol. 9 of 9, 5th Cir. Order, 13-KH-19, 1/8/13; 5th Cir. Writ Application, 12-KH-780 (postmarked 10/9/12).

[31]*State ex rel. Bazley v. State*, 118 So.3d 1107 (La. 2013); St. Rec. Vol. 2 of 9, La. S. Ct. Letter, 2013-KH-125, 1/15/13; St. Rec. Vol. 9 of 9, La. S. Ct. Writ Application, 13-KH-125, 1/15/13 (dated 1/11/13); St. Rec. Suppl. Vol. 1 of 1, La. S. Ct. Order, 2013-KH-0125, 7/31/13.

[32]St. Rec. Suppl. Vol. 1 of 1, Trial Court Order, 3/28/13.

[33]St. Rec. Suppl. Vol. 1 of 1, Motion to Quash, 7/3/13 (dated 6/26/13).

Court denied the motion on August 5, 2013, indicating that the conviction and sentence had already been reviewed on appeal and were final.[34]

Bazley did not seek review of those rulings until submission of a writ application to the Louisiana Fifth Circuit on January 10, 2014.[35] The writ application was deemed untimely filed and procedurally defective by the Louisiana Fifth Circuit on February 3, 2014.[36] The Louisiana Supreme Court also denied his related writ application on January 9, 2015, without stated reasons.[37]

In the meantime, on September 22, 2014, Bazley submitted to the Trial Court an application for post-conviction relief in which he raised the following grounds for relief:[38] (1) retaliatory arrest; (2) illegal arrest; (3) illegal search and seizure; (4) ineffective assistance of counsel; (5) he was denied the right to confront witnesses against him; (6) double jeopardy; (7) incomplete trial transcripts; (8) malicious prosecution; (9) insufficient evidence to support the conviction; and (10) manipulation of the post-conviction process by use of the procedural default laws.

The Trial Court denied relief on October 7, 2014, as repetitive and successive under La. Code Crim. P. art. 930.4(A), (D) and (E) and for seeking untimely post-conviction relief. The Louisiana Fifth Circuit denied Bazley's related writ application on December 16, 2014, finding no

---

[34]St. Rec. Suppl. Vol. 1 of 1, Trial Court Order, 8/5/13.

[35]St. Rec. Suppl. Vol. 1 of 1, 5th Cir. Writ Application, 14-KH-44, 1/15/14 (dated 1/10/14).

[36]St. Rec. Suppl. Vol. 1 of 1, 5th Cir. Order, 14-KH-44, 2/3/14; 5th Cir. Order, 14-KH-44, 3/31/14; Request for Rehearing, 14-KH-44, 3/14/14 (dated 2/18/14).

[37]*State ex rel. Bazley v. State*, 157 So.2d 593 (La. 2015); St. Rec. Suppl. Vol. 1 of 1, La. S. Ct. Order, 2014-KH-0799, 1/9/15; La. S. Ct. Writ Application, 14-KH-799, 4/17/14 (dated 4/15/14).

[38]St. Rec. Suppl. Vol. 1 of 1, Application for Post-Conviction Relief, 10/1/14 (dated 9/22/14).

error in the Trial Court's ruling.[39]  The Louisiana Supreme Court denied Bazley's subsequent writ application without stated reasons on January 9, 2015.[40]

## II.    <u>Second Amended Federal Petition (Rec. Doc. No. 39)</u>

In his most recent petition, Bazley asserts the following five grounds for relief:[41] (1) his Sixth and Fourteenth Amendment rights were violated when he was denied the right to confront Ms. Ballard and he did not sell drugs to her and she wrote him a letter denying that she told police she sold drugs to him; (2) his Fifth and Fourteenth Amendment rights were violated when he was exposed to double jeopardy when he was tried three times for the same offenses; (3) his Sixth and Fourteenth Amendment rights were violated when he was not provided with a complete trial transcript for direct appeal; (4) his Fifth and Eighth Amendment rights were violated through malicious prosecution based on his prior criminal history; and (5) his Fifth and Fourteenth Amendment rights were violated because the evidence was insufficient to support the verdict.

The State filed a response in opposition to Bazley's second amended petition asserting that the five remaining claims are without merit for the reasons alternatively argued in its original opposition response.[42]  In that pleading, the State argued that Bazley's claims (those now remaining) were found to be without merit by the state courts, and the denial of relief was not contrary to, or an unreasonable application of, Supreme Court law.

---

[39]St. Rec. Suppl. Vol. 1 of 1, 5th Cir. Order, 14-KH-817, 10/22/14; 5th Cir. Writ Application, 14-KH-817, 10/22/14 (dated 10/17/14).

[40]*State ex rel. Bazley v. State*, 157 So.3d 593 (La. 2015).

[41]Rec. Doc. No. 39.

[42]Rec. Doc. No. 45 (referencing Rec. Doc. No. 13).

Having already resolved the exhaustion issue, and finding no other procedural grounds for dismissal of these five issues, the Court will proceed to address the remaining claims as presented in Bazley's Second Amended Petition. In doing so, under the standards of review to follow, the Court will look to the last reasoned state court decision denying relief on each issue. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion). The Court recognizes that Bazley reasserted each of these issues in his second state application for post-conviction relief, which was denied because the application was repetitive and untimely under state law. These rulings do not prevent the Court from considering the prior state court rulings on the merits. *See Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994) ("the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits" and does not preclude habeas review of a claim previously addressed by the state courts on the merits).

## III.    Standards of Review on the Merits

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, establishes a standard of review governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2)

(2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it

correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410.  The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id*.  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

IV.   **Discussion**

A.   **Confrontation Clause Rights (Claim No. 1)**

Bazley argues that his Sixth and Fourteenth Amendment rights were violated when he was denied the right to confront Darkus Ballard, who was seen entering and exiting his apartment during the police investigation.  He asserts that he was denied the right to confront or cross-examine Ballard

and the admission of her statements and/or testimony as evidence against him violated his constitutional rights. Bazley further claims that he did not sell drugs to her and that she sent him a letter after his conviction stating that she did not tell police that she purchased anything from him. The State argues that Bazley's has failed to state a Confrontation Clause violation.

Bazley raised this claim to the state courts on post-conviction review. In the last reasoned opinion, the Louisiana Fifth Circuit found that Bazley's confrontation rights were not violated. The Court confirmed the Trial Court's findings that Ballard was not called by the State, was not subpoenaed by either the State or the defense, and that Bazley was not charged with distribution of narcotics to Ballard. As such, the Court resolved that Ballard's testimony was not relevant to proving the charges against him or to Bazley's defense.

Claims challenging whether a defendant's confrontation rights were violated present a mixed question of law and fact. *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008); *Horn v. Quarterman*, 508 F.3d 306, 312 (5th Cir. 2007). The court must determine whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. *Buckenberger v. Cain*, 471 F. App'x 405, 406 (5th Cir. 2012) (citing *Fratta*, 536 F.3d at 499).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Confrontation Clause therefore prohibits admission at trial of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). While the Court declined to provide a comprehensive definition of "testimonial," it did indicate that,

"[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*, at 68. The Court also indicated that testimonial statements include "ex parte in-court testimony or its functional equivalent - that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.*, at 51; *see generally Bullcoming v. New Mexico*, __ U.S. __, 131 S. Ct. 2705, 2713 (2011) (defendant has the right to cross-examine the person who actually performed testing or examination of evidence); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009) (expert report is "functionally identical" to testimonial statement ).

In the instant case, as resolved by the state courts, Bazley has not met any facet of a claim under the Confrontation Clause. That is, Bazley has not established that any statement by Ballard was presented at trial that would have been subject to cross-examination had she been present. The record reflects that Ballard was mentioned by Lieutenant Nicholas Huth as the person seen coming out of Bazley's apartment. She was referenced only as a person who exited his apartment and who was found to be in possession of marijuana, for which she was separately arrested.

Lieutenant Huth simply stated that "as a result of the conversation with her and that investigation, I instructed my detective to obtain a search warrant for the defendant's residence."[43] The reference to her was made only as part of the explanation as to steps leading up to Bazley's arrest. Lieutenant Huth did not at anytime quote a statement made by Ballard or express any detail about his conversation with Ballard. In fact, Bazley has not pointed to any state witness, including Lieutenant Huth, who testified at trial that Ballard said she purchased drugs from Bazley. As found

---

[43]St. Rec. Vol. 5 of 9, Trial Transcript, p. 12, 3/25/08.

by the state courts, there simply was no recitation or presentation of any statement by Ballard at trial that would have triggered the Confrontation Clause.

As further found by the state courts, Ballard herself was not called or subpoenaed by the State or the defense to testify at trial. Ballard also was not crucial or critical to proving or defending the possession charges against Bazley which were based solely on the narcotics found within his apartment, and <u>not</u> anything allegedly sold to Ballard or the drugs found in her possession.

Using the vernacular of the Supreme Court, there was <u>no</u> testimonial statement by Ballard admitted at Bazley's trial to invoke his rights under the Confrontation Clause. Thus, the denial of relief on this issue was not contrary to, or an unreasonable application of, *Crawford* or any other Supreme Court precedent. Bazley is not entitled to relief on this claim.

### B.    Double Jeopardy (Claim No. 2)

Bazley argues that his Fifth and Fourteenth Amendment rights against double jeopardy were violated when he was tried three times for the same offenses. He complains that the two mistrials preceding his conviction placed him in double jeopardy. The State argues that Bazley failed to state a double jeopardy claim.

Bazley raised this issue on post-conviction review to each of the state courts. The Louisiana Fifth Circuit provided the last reasoned opinion in which it determined that Louisiana law allowed for Bazley's retrial after the mistrials based on the inability of the jury to reach a verdict.

A double jeopardy claim raises a mixed question of law and fact for purposes of this Court's federal habeas review. *Carlile v. Cockrell*, 51 F. App'x 483, 2002 WL 31319380, at *1 (5th Cir. 2002) (applying the AEDPA's mixed question standard to a double jeopardy claim); *Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) (same).

The Double Jeopardy Clause of the Fifth Amendment protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). In this case, Bazley does not present a claim that falls under any of the foregoing categories. Instead, he complains that the two mistrials prior to his conviction, both of which were the result of deadlocked juries, placed him in double jeopardy. This argument is not supported by law.

Instead, the United States Supreme Court has long held that a mistrial resulting from a deadlocked jury falls within the "manifest necessity" exception to the prohibition against double jeopardy. *Logan v. United States*, 144 U.S. 263, 297-98 (1892); *United States v. Perez*, 9 Wheat. 579, 22 U.S. 579, 580 (1824). As a matter of policy, this exception is intended to allow a state to complete a prosecution against a defendant where "unforeseeable circumstances that arise during a trial [make] its completion impossible, such as the failure of a jury to agree on a verdict." *Richardson v. United States*, 468 U.S. 317, 324 (1984).

The Supreme Court also has emphasized that a "hung jury" is <u>not</u> an acquittal for purposes of double jeopardy, regardless of the sufficiency of the evidence presented at the deadlocked trial. *Richardson*, 468 U.S. 325-26; *see also Yeager v. United States*, 557 U.S. 110, 118 (2009) (observing that, "a jury's inability to reach a decision is the kind of 'manifest necessity' that permits the declaration of a mistrial and the continuation of the initial jeopardy that commenced when the jury was impaneled.") (citations omitted); *Sattazahn v. Pennsylvania*, 537 U.S. 101, 109 (2003) (noting that, "[n]ormally, a retrial following a 'hung jury' does not violate the Double Jeopardy Clause"). Thus, the mere declaration of a mistrial based on "the failure of a jury to reach a verdict is not an event which terminates jeopardy." *Richardson*, 468 U.S. at 325.

16

Bazley, therefore, has failed to demonstrate that his conviction following the two mistrials violated the prohibition against successive prosecutions found in the Double Jeopardy Clause. The denial of relief on this issue by the state courts was not contrary to or an unreasonable application of Supreme Court law. Bazley is not entitled to relief on this issue.

###    C.    Transcripts of Direct Appeal (Claim No. 3)

Bazley claims that his Sixth and Fourteenth Amendment rights were violated when he was not provided with a complete trial transcript for his direct appeal. Bazley claims that the record did not include transcripts related to his pro se motions to quash, for preliminary hearing, and for new trial, the opening statements, closing arguments, and the habitual offender proceeding. Under a broad reading, Bazley claims that this prevented him from raising meritorious claims on appeal about improper closing arguments by the State. The State responds that Bazley has not shown that he suffered any prejudice on appeal in the state courts.

The state courts denied relief on this issue when it was raised on post-conviction review. The Louisiana Fifth Circuit indicated in its reasoned decision that, as found by the state trial court, Bazley did not establish prejudice from the exclusion of the opening and closing statements because there were no objections made during either statements that would have been subject to review. In addition, Bazley failed to indicate which hearings were excluded from the record or any claims that would have entitled him to appellate review related to those motions. As a result, Bazley failed to establish any prejudice from the alleged missing portions of the record.

This type of due process question is considered on habeas review to be a mixed question of law and fact. *See Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000). The Court must determine

17

whether the state courts' denial of relief was contrary to, or an unreasonable application of, Supreme Court law.

The Supreme Court long has recognized that an indigent defendant is entitled to a free copy of transcripts of the criminal proceedings in order to have a meaningful appeal. *Hardy v. United States*, 375 U.S. 277, 281 (1964). However, the State is not "obligated to automatically supply a complete verbatim transcript," *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir.1980), and a state need not waste its funds providing for free those parts of the transcript that are not "germane to consideration of the appeal." *Draper v. Washington*, 372 U.S. 487, 495 (1963).

Louisiana law complies with these constitutional standards. Appellate review in Louisiana is restricted to questions of law based on defense objections and assignment of errors preserved for appeal. *See State v. Francis*, 345 So.2d 1120, 1125 (La.) (citing La. Const. Art. 5, § 5(C) (1974) and La. Code Crim. P. art. 841), *cert. denied*, 434 U.S. 891 (1977). Thus, when the transcripts and record contain the portions necessary to address the issues actually raised on appeal, including those portions where objections were made by counsel, the record is constitutionally sufficient for a meaningful appeal. *Schwander v. Blackburn*, 750 F.2d 494 (5th Cir. 1985).

As determined by the state courts, Bazley has not identified a particular in-court hearing that was not transcribed or one that contained some particular, reviewable error not considered by the state appellate court. For example, under a broad reading, Bazley rambles on about the appellate courts inability to consider the use of his prior trial testimony at his last trial. That issue was directly addressed by the Louisiana Fifth Circuit on direct appeal as an alleged trial error. In fact, portions of the related trial transcript were quoted by the Louisiana Fifth Circuit in its opinion.

It is well settled that a state is not "required to furnish complete transcripts so that the defendants . . . may conduct 'fishing expeditions' to seek out possible errors at trial." *Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir. 1982). As discussed by the Louisiana Fifth Circuit, Bazley did not identify any particular error that was preserved for appeal during the opening statements, closing arguments, or any hearing on his *pro se* motions. The law does not require a more complete transcript where the petitioner is completely unable "to indicate one specific error committed during the portions of trial not included in the record." *Cf.*, *United States v. Renton*, 700 F.2d 154, 159 (5th Cir. 1983).

The record in Bazley's case was deemed sufficient by and for the state appellate court's review of his appeal. Bazley did not establish that additional transcripts would have raised a question as to the validity of his conviction or contained specific errors preserved for appeal. To warrant federal habeas corpus relief on a claim that state court transcripts were unconstitutionally incomplete, the petitioner must support his claims with more than mere unsubstantiated, transparent speculation. *See Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir.1987); *United States ex. rel. Hunter v. Follette*, 307 F. Supp. 1023, 1025 (S.D.N.Y.) ("general assertion that omitted portions of the record 'contained most of the . . . trial errors which are reversible,' presents no ground for federal habeas corpus."), *aff'd*, 420 F.2d 779 (2d Cir.1969), *cert. denied*, 397 U.S. 1067 (1970). For the foregoing reasons, Bazley has not met this burden.

The denial of relief on this claim was not contrary to, or an unreasonable application of, federal law. Bazley is not entitled to relief on this issue.

D.    **Malicious Prosecution (Claim No. 4)**

Bazley asserts that his constitutional rights were violated through malicious prosecution by the State based on his prior criminal history.  Bazley speculates that his prior criminal history was the impetus behind the "three" prosecutions against him for the possession of what he calls a petty amount of narcotics.  He considers this to have been "very unusual" pursuit and unnecessary expense for the State.

In its opposition, the State quotes the findings of the state appellate court that no malicious prosecution claim was supported, and otherwise offers no assessment of this claim under federal law. When the Louisiana Fifth Circuit denied post-conviction relief on this claim, it found that Bazley failed to meet his burden of proof for a claim of malicious prosecution under Louisiana law.  In doing so, the Court noted that the officers had a warrant, located narcotics and that Bazley was convicted as charged for possession of marijuana and cocaine.  The Court concluded that Bazley had not demonstrated that he was the subject of discrimination as a previously convicted felon.

Under federal law, the concept of malicious prosecution is recognized in the nature of a tort claim as opposed to an independent basis for federal habeas corpus relief.  *See Heck v. Humphrey*, 512 U.S. 477 (1994); *Gardner v. Director, TDCJ-CID*, No. 09CV25, 2009 WL 1936121, at *8 (E.D. Tex. Jul. 6, 2009).  There is no "freestanding constitutional right to be free from malicious prosecution."  *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003).  As such, a claim of malicious prosecution does not accrue and can not be brought until such time as "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's

issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. Since this has not happened, Bazley therefore has failed to present a cognizable claim for this Court to review.

In addition, because a malicious prosecution claim is based in part on the alleged absence of probable cause for the underlying arrest, under a broad construction, it may be considered similar to false arrest or wrongful seizure under Fourth Amendment. *See Castellano*, 352 F.3d at 958-59; *Izen v. Catalina*, 398 F.3d 363, 367-68 (5th Cir. 2005) (federal malicious prosecution requires a showing of lack of probable cause). However, Fourth Amendment violations of that nature are generally not cognizable on federal habeas review. *Stone v. Powell*, 428 U.S. 465 (1976).

In *Stone*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.*, at 494 (footnotes omitted); *Williams v. Collins*, 16 F.3d 626, 637-38 (5th Cir. 1994). This rule applies to all claims arising under the Fourth Amendment. *See, e.g.*, *Cardwell v. Taylor*, 461 U.S. 571, 572 (1983) (false arrest); *Williams*, 16 F.3d at 637-38 (search and seizure).

A "full and fair" hearing as contemplated by *Stone* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court. *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)). The United States Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain

full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus

consideration of that claim whether or not the defendant employs those processes." *Caver*, 577 F.2d

at 1192. "[I]t is the existence of state processes allowing an opportunity for full and fair litigation

of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies

underlying the exclusionary rule and bars federal habeas corpus consideration of claims under

*Stone*." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980).

Thus, it is the <u>opportunity</u> to present a Fourth Amendment claim to the state courts that is

the basis of the *Stone* prohibition, without regard for whether that opportunity is actually exercised

or is unsuccessful. *Janecka*, 301 F.3d at 320-21. Even if a state defendant fails to take advantage

of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that

the opportunity existed suffices for the *Stone* bar to apply. *Id*. at 320.

The Fifth Circuit also has held that the *Stone* bar applies despite an error by the state court

in deciding the merits of the Fourth Amendment claim. *Swicegood v. Alabama*, 577 F.2d 1322,

1324-25 (5th Cir. 1978); *Woodard v. Thaler*, 702 F. Supp.2d 738, 759-60 (S.D. Tex. 2010) ("Even

if the state court improperly applied its own procedural law in refusing to consider Woodard's

Fourth Amendment argument," the *Stone* bar still applies.) (citing *Moreno v. Dretke*, 450 F.3d 158,

167 (5th Cir. 2006)). Even when the state courts err in the disposition of the Fourth Amendment

claim on procedural grounds, the *Stone* bar still applies "with equal force." *Williams*, 609 F.2d at

219-20.

Therefore, "in the absence of allegations that the processes provided by a state to fully and

fairly litigate fourth amendment claims are routinely or systematically applied in such a way to

prevent the actual litigation of fourth amendment claims on their merits, the rationale of *Caver*

dictates that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims." *Williams*, 609 F.2d at 220; *see also Janecka*, 301 F.3d at 321 (same). Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis*, 803 F.2d at 1372. The petitioner in this case has not met this burden.

Bazley does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims. In fact, his "malicious prosecution" argument is conclusory and without any factual support or record reference that would warrant review in this Court. *See Naji v. Thaler*, No. 09-CV-435, 2010 WL 2136605, at *4 (N.D. Tex. Apr. 28. 2010) (federal habeas courts do not consider bald assertions on a critical issues which are unsupported by the record) (citing *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir.1983). In addition, the record is clear that the issue of false arrest/lack of probable cause was specifically raised and addressed in Bazley's direct appeal.

Bazley simply has not alleged or demonstrated that Louisiana state courts routinely or systematically preclude such litigation. Moreover, this Court has recognized that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) (Duval, J.) (order adopting referenced report and recommendation). For purposes of the Fourth Amendment, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state

court's determination of [his] federal claims." *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (quotations and citation omitted).

To the extent his malicious prosecution claim could be broadly construed as a claim of insufficient evidence, that issue has been separately raised by Bazley and will be addressed later in this Report. As for his malicious prosecution claim, Bazley has failed to present a cognizable federal habeas claim and otherwise has failed to demonstrate that the denial of relief was contrary to, or an unreasonable application of, any Supreme Court precedent. He is not entitled to relief on this issue.

**E.    Sufficiency of the Evidence (Claim No. 5)**

Bazley contends that his Fifth and Fourteenth Amendment rights were violated because he was convicted based on insufficient evidence to support the verdict. He contends that based on his location when he was stopped, anyone, including the arresting officers, could have placed the narcotics in the toilet where they were found. He asserts that there was insufficient evidence to prove that he knowingly possessed the narcotics found floating in the toilet bowl or had constructive possession, since other people had access to the apartment.

In its opposition, the State again merely quotes the findings of the state appellate court that no malicious prosecution claim was supported, and otherwise offers no assessment of this claim under federal law. The Louisiana Fifth Circuit considered the sufficiency of the evidence on direct appeal from Bazley's conviction and relied on the standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979) and related state law. In doing so, the Court found that the evidence was sufficient to establish that Bazley resided in and had control of the apartment and that Bazley had constructive

24

possession of the narcotics.  In addition, the Court noted that the credibility determinations made by the jury were not to be second guessed or re-weighed on appeal.

Claims of insufficient evidence present a mixed question of law and fact.  *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of Supreme Court law.  *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011).  Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.  Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."  La. Rev. Stat. Ann. § 15:438.  However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review.  *Gilley*, 968 F.2d at 467 (citing *Schrader*, 904 F.2d at 284).

To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under

*Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord State v. Williams*, 693 So.2d at 208. The appropriate standard for this Court remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial.") (quoting *Jackson*, 443 U.S. at 324). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

In Louisiana, to support a conviction for possession of cocaine, the State must prove that the defendant was in possession of cocaine, and that he knowingly possessed it. La. Rev. Stat. Ann. § 40:967(C); La. Rev. Stat. Ann. § 40:964, Schedule II(A)(4); *State v. Jones*, 985 So.2d 234, 241 (La. App. 5th Cir. 2008). Similarly, to support a conviction of second offense possession of marijuana, the State must prove that the defendant was in possession of marijuana, he knowingly possessed the marijuana, and he had a prior conviction for possession of marijuana. La. Rev. Stat. Ann. §§ 40:966(C), (E)(2); La. Rev. Stat. Ann. § 40:964, Schedule II(A)(4); *State v. Jones*, 985 So.2d at 241.

The element of guilty knowledge under Louisiana law is a state of mind that need not be proven as fact, but may be inferred from the circumstances. *State v. Smith*, 752 So.2d 314, 317 (La. App. 4th Cir. 2000); *State v. Reyes*, 726 So.2d 84, 88 (La. App. 5th Cir. 1998); *State v. Davies*, 350 So.2d 586, 588 (La. 1977). The element of possession is shown where the defendant exercised either actual or constructive possession of the substance. *State v. Williams*, 802 So.2d 909, 914 (La. App. 5th Cir. 2001).

"Actual possession" means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. *State v. Walker*, 747 So.2d 133, 138 (La. App. 2d Cir. 1999). A person not in physical possession of a drug may have

constructive possession when the drug is under that person's dominion or control.  *State v. Reyes*, 726 So.2d at 88.

The Louisiana Supreme Court has indicated certain factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession which may include the following: (1) the defendant's knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia; and (6) evidence that the area was frequented by drug users.  *State v. Williams*, 735 So.2d 62, 69 (La. App. 5th Cir. 1999) (citing *State v. Appacrombie*, 616 So.2d 285, 288 (La. App. 2d Cir. 1993)).

Under a broad reading, Bazley argues that the State failed to present adequate proof that he knowingly possessed the drugs found floating in the toilet or that he had constructive possession of the narcotics.  Bazley does not address or contest that the testimony and evidence presented at trial established that the substances recovered from the toilet in fact were marijuana and cocaine.

First, to prove his constructive possession of the narcotics, the State presented the testimony of Lieutenant Huth and Detective Kevin Treigle to establish that the narcotics were located in the apartment where Bazley had been seen throughout the surveillance period and from whence he exited just before his arrest.  Drug paraphernalia also was found in the kitchen of Bazley's apartment.

The jury also heard the testimony of Wilemina Herring, a records custodian from Entergy, who verified that the electric bill for the apartment was in the name of Lucien Bazley on the day of his arrest, February 23, 2007.  The jury also heard the testimony of the apartment's property

manager, Gerard Keller, who testified that Lucien Bazley was the occupant of the apartment in February of 2007 and paid the previously unpaid rent on February 22, 2007, owed by the prior tenant.  Keller conceded that the prior tenants name was still on the lease but that was only because the security deposit had not yet been released to him or switched into Bazley's name.  Keller, nevertheless, knew that Bazley had taken over the apartment.

The information provided by these witnesses, which apparently accepted by the jury, established that Bazley had dominion and control over the apartment where the narcotics were found.  Bazley had a key to the apartment, paid the rent, and was responsible for the utilities.

Bazley also does not deny, and the evidence did show, that drug paraphernalia were found in the apartment and other known drug users were in and out of the apartment during the surveillance period, including Ballard.  The evidence was more than sufficient for a reasonable jury to conclude that Bazley was in constructive possession of the narcotics found floating in the toilet inside of the apartment he occupied.   Under Louisiana law, because of Bazley's established constructive possession of the narcotics, a reasonable jury could infer his guilty knowledge from the circumstances.  *State v. Wright*, 920 So.2d 871, 876 (La. App. 5th Cir. 2005).

Thus, the evidence presented at trial established that Bazley was in constructive possession of the narcotics, cocaine and marijuana, found in the apartment over which he had dominion and control and had guilty knowledge of the presence of the marijuana and cocaine based on the circumstances.  In addition, the State provided information, not challenged here, that Bazley previously had been convicted of possession of marijuana.  All of this evidence was sufficient for a reasonable jury to find that Bazley was guilty of both possession of cocaine and second offense possession of marijuana.

Based on the foregoing, the state courts' denial of relief was neither contrary to nor an unreasonable application of *Jackson*.  Bazley is not entitled to relief on this issue.

## V.      Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Lucien P. Bazley's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[44]

New Orleans, Louisiana, this 17th day of February, 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[44]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.